IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| PAUL LANAKILA CAMPOS, | ) | CV. NO. 06-00526 HG-KSC |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | FINDINGS AND RECOMMENDATION TO |
| vs. | ) | GRANT DEFENDANT'S MOTION FOR |
|  | ) | SUMMARY JUDGMENT AND ORDER |
| UNITED STATES OF AMERICA, | ) | DENYING REQUEST FOR DISCOVERY |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND ORDER DENYING REQUEST FOR DISCOVERY**

On September 27, 2006, Plaintiff Paul Lanakila Campos, proceeding *pro se*, filed this case under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346(b).  Campos alleges that, on November 1, 2005, while incarcerated at the Federal Detention Center-Honolulu ("FDC"), he slipped and fell while stepping out of the shower in his cell, seriously aggravating a pre-existing injury to his jaw.

Before the court is Defendant's Motion for Summary Judgment ("Motion") brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 74.)  The Motion was referred to this court pursuant to 28 U.S.C. § 636(b)(1)(B).  Defendant also filed a supplemental submission to the Motion ("Supplement").  (Doc. No. 82.)

Campos filed a Memorandum in Opposition to the Motion ("Opposition") on March 17, 2008.[1]  Campos's Opposition was due

_____

[1] Although Campos titles his Opposition a "Motion in Opposition," it does not appear to be a counter motion for summary judgment, but simply an Opposition to Defendant's Motion. Campos signed the Opposition on March 12, 2008, and it was mailed

on or before February 29, 2008, and is therefore untimely.  *See*
Local Rule LR7.4.  The court allowed Defendant to file a Reply to
the Opposition, which was filed on April 2, 2008.  (Doc. No. 92)

After careful consideration of the memoranda in support
of and opposition to the Motion, and the parties' arguments at
the hearing, the court FINDS AND RECOMMENDS that Defendant's
Motion for Summary Judgment be **GRANTED**.

## I.   BACKGROUND

### A.   Campos's Complaint

Campos alleges that, on November 1, 2005, as he stepped
out of the shower in his Special Housing Unit ("SHU") cell, he
slipped and fell on water that had accumulated outside of the
shower on the cell's cement floor.  Campos says that, although
the cell shower had a shower curtain, the curtain was inadequate
and did not prevent water from leaking onto the cell's floor.  As
a result of the fall, Campos says that an external oral surgery
device that was affixed to his jaw, to repair an earlier gunshot
wound, became loose and his face swelled. (*See* Comp. Ex. D.)
Within several hours of the accident, Campos was treated by the
FDC nurse.  (Comp. Ex. C.)

Campos filed an administrative claim regarding the
incident.  (Comp. Ex. A.)  In his administrative claim and in his

---

from Maui Community Correctional Center ("MCCC") on Friday, March
14, 2008.  On the back of the Opposition's mailing envelope,
there is an unidentified signature certifying that it was
delivered to prison officials for mailing at 6 a.m March 14,
2008.

deposition, Campos states that he requested towels from corrections officers, and from a Lieutenant Payne in particular, to wipe up the water that accumulated when the shower was running, but the request was denied.[2]  (*Id.* p. 3; Supplement, Ex. A, Campos Dep. 42:16, Feb. 11, 2008.)  Campos alleges that he developed a "lump" on his face after the incident, as well as scarring which requires plastic surgery.  On March 23, 2006, the Bureau of Prisons ("BOP") denied Campos's administrative claim. (Comp. Ex. B.)  A little more than six months later, on September 27, 2006, Campos filed this lawsuit.

**B.   Defendant's Motion**

Defendant filed this Motion on February 8, 2008. Defendant provides a copy of the United States Bureau of Prison's ("BOP") Program Statement regarding Occupational Health and Environmental Safety (No. 1600.08) ("Program Statement"),[3] which provides that "unsafe or unhealthy conditions reported by staff or inmates will be examined and corrected when appropriate." (Program Statement at ¶ 2.b.)

Defendant states that all new FDC inmates are given instructions on a variety of topics during orientation, including

---

[2] Payne disputes this, stating that he has no recollection that Campos ever asked him for extra towels, or told him that there was water on Campos's floor, or that the shower curtain was defective, prior to the date of Campos's alleged fall.  (Def.'s Reply, Payne Dec. ¶ 3.)

[3] Selected pages of the Program Statement are attached as Exhibit A to Defendant's Concise Statement of Material Fact in Support of Defendant's Motion for Summary Judgment ("Defendant's Concise Statement").

safety and sanitation.[4]  During the fifteen to thirty-minute training session on safety, the inmates receive instructions on how to prevent and report personal injuries.  They are also informed that it is their responsibility to keep their cells clean.  The inmates are instructed to report any safety hazards immediately to the nearest corrections officer.  (Def.'s Concise Statement, Pascual-Cantu Dec. ¶¶ 5, 7-8.)

Each BOP facility is required to maintain a written housekeeping plan.  (Program Statement, Ch. 11 ¶ B.1.)  The FDC's housekeeping plan[5] requires the Safety Manager to "conduct a comprehensive and thorough monthly inspection of all areas of the institution, reviewing sanitation, pest control, environmental health issues, fire prevention and safety.  (Housekeeping Plan ¶ II.)  The Plan states that inmates "[a]re responsible for maintaining their individual living areas in the housing units and are also assigned as orderlies to clean under the supervision of staff in all areas of the facility." (*Id.* ¶ III.)  Lilia Pascual-Cantu, the FDC Safety Manager, states that monthly inspections of all areas are conducted according to the Housekeeping Plan.[6]  (Pascual-Cantu Decl. ¶ 19.)

---

[4] Campos disputes this, stating that he was never given any type of orientation or safety training, but went straight from intake ("RND") to the SHU.  (Opp. at 2; Suppl., Ex. A, Campos Dep. 31:21-23, Feb. 11, 2008.)

[5] Selected pages of FDC's Housekeeping Plan are attached as Exhibit B to Defendant's Concise Statement.

[6] Campos states that he has never saw anyone perform a monthly or weekly inspection of the SHU, nor was his cell ever "assessed," to his knowledge.  (Opp. at 3.)

Each SHU cell contains a shower, toilet, sink, bench/desk and a bed and can accommodate up to two inmates. (*Id.* ¶ 12.) Each SHU cell's shower has a shower curtain to prevent water from traveling from the shower to the cell's floor. (*Id.*) The shower curtain is not "full-length," so that SHU inmates can be observed in their cells at all times if necessary. (Def.'s Reply, Payne Dec. ¶ 5.) All SHU inmates are provided with items for daily living, including a towel. (*Id.* ¶ 13.) Due to safety concerns, SHU inmates are not given shower mats, and are only allowed a limited amount of personal or government property in their SHU cells. (Def.'s Reply, Payne Dec. ¶¶ 7 & 8.) The SHU showers only release an intermittent stream as a security measure to prevent inmates from using the shower to flood the cell. (Payne Dec. ¶ 6.) To activate the shower's water, the SHU inmate must press a button in the shower, that releases a spurt of water, lasting between 10-60 seconds. (*Id.*)

Correctional officers assigned to the SHU make rounds throughout the SHU every half hour and department heads make daily rounds through the SHU. (*Id.* ¶¶ 14 & 16.) The FDC also conducts monthly inspections of the SHU. (*Id.* ¶ 21.)

There were no previously reported injuries due to water leaking from the shower in Campos's cell. (*Id.* ¶ 22.) Defendant alerts the court, however, that another inmate, Joseph Gomes, reported several slip and fall accidents at the FDC between 2003

and 2005.[7]

## II. **LEGAL STANDARD**

Effective December 1, 2007, Rule 56(c) of the Federal
Rules of Civil Procedure has been amended.  Summary judgment
shall be granted when "the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c) (effective Dec. 1, 2007).[8]  Because no substantive change
in Rule 56(c) was intended, the court interprets the new rule by
applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to
identify and dispose of factually unsupported claims and
defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
Accordingly, "[o]nly admissible evidence may be considered in
deciding a motion for summary judgment."  *Miller v. Glenn Miller
Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).  Summary
judgment must be granted against a party that fails to
demonstrate facts to establish what will be an essential element

---

[7] *See Gomes v. United States*, Civ. No. 05-00363 LEK,
consolidated with *Gomes v. United States*, Civ. No. 06-00477 LEK.
Gomes alleges that he slipped and fell on four separate occasions
over a two-year period, while he was incarcerated at the FDC. One
fall occurred in a different SHU cell, allegedly caused by water
leaking from the wash basin.

[8] "The language of Rule 56 has been amended as part of the
general restyling of the Civil Rules to make them more easily
understood and to make style and terminology consistent
throughout the rules.  These changes are intended to be stylistic
only."  Rule 56 Advisory Committee Notes, 2007 Amendments.

-6-

at trial.  *See Celotex*, 477 U.S. at 323.

A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323); *accord Miller*, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  *Miller*, 454 F.3d at 987.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.

2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Miller*, 454 F.3d at 988 (quotations and brackets omitted).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. In inmate cases, the court must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, — U.S. —, —, 126 S. Ct. 2572, 2576 (2006).

### III. <u>DISCUSSION</u>

The court first notes that, although given the opportunity and instructions on how to do so, Campos failed to file his Opposition until March 17, 2008, the day before the hearing on the Motion was scheduled.[9] The Opposition was due on

---

[9] Campos is clearly able to file a timely Opposition. In this action he has filed nineteen motions, notices, requests,(*see* Doc. Nos. 7, 8, 10, 12, 14, 17, 22, 35, 38, 42, 51, 53, 54, 60, 62, 63, 70, and 80), and numerous letters and other documents (*see* Doc. Nos. 11, 20, 21, 24, 26-29, 41, 46, 50, 58, 60, 68, 71, 81). He also asked for and received further guidance from the court regarding how to oppose a motion for summary judgment (Doc.

February 29, 2008.  Campos signed the Opposition on March 12,
2008, and apparently gave it to prison authorities for mailing on
March 14, 2008.  The Opposition was not docketed, nor did this
Court receive a copy of the Opposition, until after the hearing
concluded.  Thus, even taking into account the prison mailbox
rule, which deems certain documents filed on the date that they
are given to prison authorities by a pro se inmate, Campos's
Opposition was still fourteen days late.[10]

        Nonetheless, in consideration of Campos's pro se
status, the court accepts and considers the Opposition.

## A.   **Federal Tort Claim Act and Negligence**

### 1.   <u>Bureau of Prisons</u>

        Section 1346(b) of the FTCA establishes federal
jurisdiction over civil suits for money damages against the
United States

> for injury or loss of property, or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of
> the Government while acting within the scope
> of his office or employment, under
> circumstances where the United States, if a
> private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

"Even when the injury occurs on federal property, the finding of
negligence must be based upon state law."  *Lutz v. United States*,
685 F.2d 1178, 1184 (9th Cir. 1982).  The party seeking federal

_____

Nos. 80, and 84 "Order: Information to Pro Se Litigant.")

        [10] Pursuant to *Houston v. Lack*, 487 U.S. 266, 275-76 (1988),
pro se prisoner filing is dated from the date the prisoner
delivers it to prison authorities for mailing.

jurisdiction must demonstrate that state law would recognize a cause of action in negligence against a private individual for like conduct. *Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007); *Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978).

> Under 18 U.S.C. § 4042(a) the BOP shall:
>
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
>                          . . . .

Section 4042(a) sets out the duty of care that the BOP owes federal prisoners, "independent of an inconsistent state rule." *See United States v. Muniz*, 374 U.S. 150, 164-65 (1963). The Ninth Circuit interprets this to mean that, "while a prisoner's remedy for a breach of the duties prescribed by section 4042 is an action brought pursuant to the [FTCA], . . ., such actions still require us to discover whether a private individual responsible for the care and protection of another individual would be liable pursuant to state law in the circumstances of the particular case." *United Scottish Ins. Co. v. United States*, 614 F.2d 188, 198 n.9 (1979) (internal citation omitted).

Under § 4042, the BOP has a duty to exercise ordinary diligence to keep inmates safe from harm. *Flechsig v. United States*, 786 F. Supp. 646, 649 (E.D. Ky. 1991). The BOP is not an

insurer of the safety of an inmate.  *Hossic v. United States*, 682

F. Supp. 23, (M.D. Pa. 1987).  The BOP's duty is therefore not

absolute, but depends on the reasonableness under the

circumstances.  *Fleschig*, 786 F. Supp. at 650.

 2. <u>Hawaii Law</u>

  Under Hawaii law, the elements of a negligence cause of

action are:

> (1) A duty, or obligation, recognized by the law,
> requiring the [defendant] to conform to a
> standard of conduct, for the protection of
> others against unreasonable risks[;]
> (2) A failure on the [defendant's] part to
> conform to the standard required: a breach of
> the duty . . . [;]
> (3) A reasonably close causal connection between
> the conduct and the resulting injury . . .
> [and]
> (4) Actual loss or damage resulting to the
> interests of another. . . .

*Knodle v. Waikiki Gateway Hotel, Inc.*, 742 P.2d 377, 383, 69 Haw.

376, 385 (Haw. 1987) (citation omitted).

  The Hawai`i Supreme Court has held that

> if a condition exists upon the land which poses an
> unreasonable risk of harm to persons using the
> land, then the possessor of the land, if the
> possessor knows, or should have known of the
> unreasonable risk, owes a duty to the persons
> using the land to take reasonable steps to
> eliminate the unreasonable risk, or adequately to
> warn the users against it.

*Corbett v. Ass'n of Apartment Owners of Wailua Bayview*

*Apartments*, 772 P.2d 415, 417, 70 Haw. 415, 417 (1989);

*Richardson v. Sport Shinko (Waikiki Corp.)*, 880 P.2d 169, 178, 76

Haw. 494, 503 (1994)).

  Thus, an owner or occupant of the land will be liable

-11-

for a plaintiff's injury if the owner or occupant was previously put on actual or constructive notice of an unreasonably unsafe condition that caused the injury. *See Harris v. State*, 623 P.2d 446, 448, 1 Haw. App. 554, 557 (1981). "Constructive notice is a legal inference or presumption by which, for promotion of sound policy or purpose, the legal rights and interests of parties are treated as though they had actual notice or knowledge." *Gump v. Walmart Stores, Inc.*, 93 Haw. App. 428, 438, 5 P.3d 418, 428; *American Sec. Bank v. Read Realty, Inc.*, 1 Haw. App. 161, 164-65, 616 P.2d 237, 241 (1980). The owner or occupant is put on constructive notice of the unsafe condition if it existed for such a period of time that the owner or occupant should have been able to detect it through the exercise of reasonable diligence. *See Hascup v. City & County of Honolulu*, 2 Haw. App. 639, 604, 638 P.2d 870, 872 n.1 (1982) (quoting *Kellett v. City & County of Honolulu*, 35 Haw. 447, 457 (1940)). An owner or occupant, however, is not the insurer of his property and is not necessarily liable for every resulting injury. *See Harris*, 623 P.2d at 449, 1 Haw. App. at 557.

**B.   Argument**

Defendant argues that: (1) there is no evidence that Defendant knew or reasonably should have known of the conditions that allegedly caused Campos's slip and fall in his cell; (2) Campos was responsible for maintenance of his own cell; and (3) Campos was or should have been aware of the water that accumulated when he took a shower, and had a duty to exercise

reasonable care to avoid injuring himself.

Campos declares that Defendant was aware of the water that accumulated on the floor of his cell, because he "had asked the guards and staff that walk through the 'SHU' for an 'extra towel' to place on the floor of the 'cell.' (Plaintiff's cell floor), and had asked the 'SHU' Lt. Payne, 'twice' for an 'extra towel' to place outside the shower in Plaintiff's 'cell.'"  (Opp. 8.)  Plaintiff also claims that Defendant was aware of the "defective and dangerous" conditions caused by the SHU's allegedly "defective shower curtains," because of prior incidents involving other inmates.[11] (Opp. 8-9.)

1.    Defendants Had No Actual or Constructive Knowledge of an Unreasonable Risk of Danger

Defendant states that there is no evidence showing that there had been "any prior instance of water causing injuries in the area of [Campos's] [a]lleged slip," or of water on the floor in Campos's cell.  (Mot. 10; Pascual-Cantu Decl. ¶ 22.) Defendants also argue that there is no evidence showing that

---

[11] In support of this argument, Campos refers the court to *Gomes*, *supra*, and to other unnamed inmates who have allegedly fallen but failed to file a civil suit because they were unaware of the FTCA remedy.  Campos directs the court to review the FDC's Injury Assessment Reports for all inmates who may have slipped and fallen while housed in the SHU, but does not provide copies of these records.

First, Gomes alleges he fell in his SHU cell because his *sink or toilet* was leaking, not due to water leaking from the shower curtain onto the floor. *See Gomes*, Civ. No. 05-00363, Doc. No. 53, Ex. C, Gomes Dep. 64:19, Sep. 29, 2006.  Gomes had also promptly reported the leaking basin to FDC officials.

Second, Campos provides no evidence of other inmates' reports of slip and falls due to the shower curtain leaking.

there was a similar type of fall in any other SHU cell due to water on the floor coming from a cell's shower.  Defendant therefore asserts that it had neither actual nor constructive knowledge of an unreasonably dangerous condition that could be expected to cause Campos's alleged slip and fall.

In *Harris*, the Hawaii court held that the State was not negligent for a plaintiff's fall near a water cooler at the Kaneohe State Hospital, when no evidence was presented of the length of time that the water was on the floor, or that the water on the floor created a dangerous condition that the State Hospital knew or should have known about.  623 P.2d at 448, 1 Haw. App. at 557.  The court also found that the water was open and obvious to the plaintiff.  "[T]he duty of care which the State, as an occupier of the premises owed to the appellant does not require the elimination of known or obvious hazards *which are not extremes and which appellant would reasonably be expected to avoid.*"  *Id.* (emphasis added) (*citing Freidrich v. Dep't of Transp.*, 60 Haw. 32, 586 P.2d 1037 (1978)).  The *Harris* court, finding that the State Hospital's patients were required to maintain the area themselves, and that no evidence revealed that the area near the water cooler was reported as needing cleaning, stated that "to accept [plaintiff's] contention [that the State owed a duty to ensure against this particular hazard], would place the State and all other owner occupiers in the position of insurers for all persons coming upon the premises.  This view goes far beyond the scope of recovery for negligence."  *Id.* 557-

-14-

58.

Defendant asserts that, even accepting Campos's claims
that he told Lt. Payne and other unnamed corrections officers
that the shower curtain was inadequate or "defective," and that
water accumulated on his floor during and after a shower, and
that he needed extra towels to wipe the water up, he does not say
*when* he told prison officials about these issues, and there is no
evidence that he told them *before* he fell.  Thus, Defendant was
not put on notice that an unreasonably dangerous condition
existed in Campos's cell before the alleged accident.  (Rep. 4-
5.)  Defendant argues that, even if Campos had told prison
officials about the water on his cell's floor before the incident
occurred, this would not establish actual or constructive notice
of an unreasonable risk, because water on a bathroom floor after
a shower is an expected and common occurrence both inside and
outside of a prison, and would not alert a reasonable person or
prison official to an extreme or dangerous risk to an inmate's
health or safety.

Defendant further asserts that the FDC took reasonable
steps to eliminate unsafe conditions by equipping the showers
with shower curtains and providing inmates with "objects (i.e.,
towels)" to wipe up the water on the cell floors.  (Mot. 11.)
Moreover, SHU personnel make half-hourly rounds in the SHU, FDC
personnel are in contact with SHU inmates in their cells three
additional times per day when meals are delivered and again when
SHU inmates are moved to the SHU cage for recreation, and FDC

-15-

employees conduct monthly safety inspections in the SHU. Defendant argues that all of these precautions were not only reasonable under the circumstances, but exhibit more than simple "ordinary diligence" in attempting to keep FDC SHU inmates safe.

The court accepts as true Campos's assertions that he told corrections officers that he requested extra towels to wipe up the water after he took a shower and that "everyone" in the SHU knew that the showers leaked.[12] (Suppl. Campos Dep. 42:14-25, Feb. 11, 2008.) Nonetheless, Campos's assertions are still insufficient to create a genuine issue of material fact that Defendant knew or should have known that water dripping from the shower curtain onto the cell floor created such an inherently extreme dangerous condition that additional steps were required to protect Campos's safety. Defendant may have been aware that the shower curtains allowed water to leak onto the floor, but that in itself does not give rise to an assumption that Defendant had actual or constructive knowledge of an unreasonable risk to Campos or other inmates. There are sinks and showers in each SHU cell. It is reasonable to expect that water would be present on the cell floor in the inmate's normal course of daily hygiene,

---

[12] Campos states:

A.   Well, yeah, everybody knows the water gets on the ground.
Q.   And after you took a shower, what happened?
A.   Even the Cos know, I would tell them, hey, can I get something to wipe up the floor, you know, because I only have one towel. I can't use this to wipe up all this crap. They said no, you can only have one towel in each cell.

(Campos Dep. 42:14-21, Feb. 11, 2008.)

just as water splashes on the floor of any bathroom during and after a shower.  Knowledge that this happens, however, does not alert the reasonable person to an unreasonably dangerous condition.  Moreover, Defendant asserts, and Campos does not refute, that there is no evidence that other SHU inmates had been injured in Campos's or any other SHU cell, due to water dripping from the shower curtain onto the cell floor.

Defendant took ample, more than sufficient measures that were reasonably calculated to eliminate any unreasonable risks of harm to inmates in the SHU.  Defendants provided shower curtains in the SHU cell showers.  The SHU showers were set to allow only intermittent sprays of water so that the cells could not be flooded.  (Def.'s Reply, Payne Dec. ¶ 6.)  Corrections officers visually and verbally monitored the SHU cells every half hour for dangerous conditions.[13]  Contact is also made with the inmates during meal delivery, and on daily and monthly rounds. If a guard sees a dangerous condition, or if an inmate reports that a repair is necessary, the BOP attempts to make the repair as soon as possible.  There is no evidence showing that Campos sought such a repair or formally reported his concerns before he allegedly fell.  Defendant clearly met its duty to exercise ordinary diligence to keep inmates safe from harm.  *See*

---

[13] The court accepts as true Campos's statement that he never saw FDC officials visually inspect his cell every half hour, or weekly, or monthly.  Nonetheless, simply because Campos did not see prison officials peer into his cell does not negate Defendant's assertion that these inspections occurred.

*Flechsig*, 786 F. Supp. at 649.  As such, the court **FINDS** that
Defendant was **not** on actual or constructive notice of an
unreasonably dangerous condition in Campos's cell, and that
Defendant took adequate steps to prevent unreasonable risks to
Campos and all SHU inmates.  The court therefore **RECOMMENDS** that
summary judgment be **GRANTED** to Defendant.

> 2.  <u>Campos's Duty to Exercise Reasonable Care</u>

Defendant also argues that, if Campos knew that the
shower leaked every time he used it, creating an obvious danger
in Campos's opinion, then Campos had a duty to exercise
reasonable care to avoid that danger.  "The duty of care which
. . . an occupier of the premises owe[s] to [a plaintiff] does
not require the elimination of known or obvious hazards which are
not extreme and which [a plaintiff] would reasonably be expected
to avoid."  *Freidrich*, 586 P.2d at 1040, 60 Haw. at 36.
Defendant asserts that, because Campos admits that he, and in
fact "everyone," knew of the open and obvious water on the floor
that occurred each time he showered, and failed to take the steps
necessary to avoid this hazard, summary judgment must be entered
against Campos.

Campos argues that he could not avoid stepping into the
water upon exiting the shower because the cell is so small that
there was nowhere else to step.  This argument blurs the issue
and sidesteps the standard of care with which Campos is charged.
Campos did not have a duty to avoid stepping in the water, Campos
<u>had a duty to avoid a known and obvious hazard, by taking steps</u>

-18-

to prevent himself from slipping in the water.

Campos says that he exited the shower immediately after the water stream turned off in the shower. (Def.'s Ex. A, Campos Decl. 44:17-19, Feb. 11, 2008.) Campos was standing outside of the shower, presumably directly on the water, drying off for approximately one minute, possibly less, before he slipped. (*Id.* 43:24.). Campos does not explain why, if he was aware that the shower curtain always dripped water onto the floor outside of the shower, and he was aware of the puddle it created, and he believed that this water was dangerous to him, he nonetheless dried himself off just outside of the shower, while standing directly in the water. Although prison cells are not normally roomy, it is unclear why Campos didn't step away from the water outside of the shower stall to dry himself off, or take other precautions, such as holding onto the bunk ladder or wall, or by sitting on his bunk, while drying himself off.

Campos also suggests that the shower stall is too small for him to dry himself while still inside, but he admits that he never attempted to do so. (Campos Dep. 44:10-13, Feb. 11, 2008 ("you can't dry yourself in the shower. The shower is only about like this wide (indicating). I mean, you could try, but – you know what I'm trying to say?").) If the shower is large enough for Campos to step completely inside, and large enough to effectively clean himself, then it is likely large enough to towel dry to some extent before exiting, enabling Campos to finish drying himself away from the shower stall.

-19-

The accumulation of water outside of the shower was admittedly known to Campos.  The water on the floor was not such an extreme and unreasonably dangerous hazard that Defendants were on notice of a dangerous condition because of it.  Moreover, knowing that the water was always there, Campos could have taken steps to avoid the accident, if not the water.  As such, the court FINDS and RECOMMENDS that summary judgment be **GRANTED** to Defendant on this basis also.

**C.    Campos Putative Request for Additional Discovery is Denied**

In his Opposition, almost as an aside, Campos writes: "*Note: Plaintiff Paul L. Campos has 'not' completed 'Discovery' yet, and is preparing interrogatories for R. Humes, Mid Level Prac., Former employee of the 'BOP' F.D.C. Honolulu Medical Unit, 'who' will shine a 'light' on the 'fact.')"  (Mem. in Opp. 9.) Richard Humes is the FDC Family Nurse Practitioner who treated Campos after Campos's fall in his cell.  (*See* Pl.'s Suppl. Concise Statement of Facts, Def.'s Response to Pl.'s First Request for Interrogatories ¶ 1.)

Rule 56(f) of the Federal Rules of Civil Procedure provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)  deny the motion;
>
> (2)  order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

*See* Fed. R. Civ. P. 56(f).  Thus, the court has discretion to continue a motion for summary judgment if the opposing party must pursue discovery of essential facts.  *California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).  It is not an abuse of discretion, however, to deny the request if the party seeking additional discovery has failed to diligently pursue discovery.  *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995).

Campos's "request" fails to establish what steps he has taken to date to secure the information he seeks from Mr. Humes. This incident occurred more than two and a half years ago.  Other than his interrogatories to Defendant, in which he was informed that Mr. Humes is no longer employed by the FDC-Honolulu, it is unclear what other steps Campos has taken to depose Mr. Humes. More important, Campos does not explain what information Mr. Humes has that is relevant to the issues of Defendant's actual or constructive knowledge prior to the accident of an unreasonable danger to Campos, or of Campos's duty to avoid a known and obvious risk.  Insofar as Campos requests additional time to conduct discovery on this issue, the request is DENIED.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the court **FINDS** that Defendant did not have actual or constructive notice of the conditions that allegedly caused Campos's injury, that the conditions as alleged were not so extreme or unexpected as to

-21-

constitute an unreasonable danger, and that Campos had the ability and duty to reasonably avoid those conditions.  The court **RECOMMENDS**, therefore, that Defendant's Motion for Summary Judgment be **GRANTED**.  The court also **DENIES** Campos's request for additional discovery.

IT IS SO FOUND AND RECOMMENDED AND ORDERED.

Dated: Honolulu, Hawaii, April 7, 2008.



_____
Kevin S.C. Chang
United States Magistrate Judge

*Campos v. United States*, Civ. No. 06-00526 HG-KSC; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; dmp/F&Rs 08/Campos 06-526 (grant MSJ)